474 So.2d 306 (1985)
Dale MATILLA, Appellant,
v.
Barbara MATILLA, Appellee.
No. 85-53.
District Court of Appeal of Florida, Third District.
July 16, 1985.
Rehearing Denied September 10, 1985.
Gerald A. Rosser, Miami, for appellant.
Michael D. Felton, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
Dale and Barbara Matilla grew up and married in the state of Michigan. In 1981, a daughter, Corrie, was born there. Shortly thereafter, they came to Florida in search of improved employment opportunities. The marriage broke up and was dissolved in 1985. The trial judge determined that the child's primary physical residence should be with the mother, with liberal visitation rights to the father. The sole issue on this appeal is the father's claim that, because he had a responsible position as a police officer and wished to remain in Florida, the trial judge erred in permitting the mother to return, as she wished, to Michigan with the child. We find no abuse of discretion in this ruling. Anderson v. Anderson, 461 So.2d 130 (Fla. 3d DCA 1984); Simon v. Simon, 435 So.2d 941 (Fla. *307 4th DCA 1983); Hale v. Hale, 12 Mass. App. 812, 429 N.E.2d 340 (1981), and cases cited; Grothendick v. Grothendick, 175 Neb. 726, 123 N.W.2d 646 (1963); cf. McIntyre v. McIntyre, 452 So.2d 14 (Fla. 1st DCA 1984); but cf. Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983).
We endorse the extensive analysis of the present issue in D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27 (Ch. Div.), aff'd per curiam, 144 N.J. Super. 352, 365 A.2d 716 (App.Div. 1976), where the court, in discussing the difference in a child's relationships with the residential and the non-residential parent, pointed out:
Even under the best of circumstances and where the custodial parent is supportive of a continuing relationship between the child and the non-custodial parent, the nature of a parental relationship sustainable by way of visitation is necessarily and inevitably of a different character than that which is possible where the parents and children reside together as a single-family unit. The fact remains that ordinarily the day-to-day routine of the children, especially young ones, and the quality of their environment and their general style of life are that which are provided by the custodial parent and which are, indeed, the custodial parent's obligation to provide. The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.
D'Onofrio, 144 N.J. Super. at 204-206, 365 A.2d at 29-30. The court went on to say, and we again agree, that the factors to be considered in determining whether the residential parent should be permitted to leave the jurisdiction include
the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children, ... the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders ... which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed. The court should not insist that the advantages of the move be sacrificed ... solely to maintain weekly visitation by the father... . It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year [or longer visits during the summer] ... may well serve the paternal relationship better than the typical weekly visit... .
Id. at 206-207, 365 A.2d at 30.
Applying these standards to the order below, we cannot interfere with the trial court's determination as to the best interests of the child with whose welfare it was charged. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
Affirmed.
JORGENSON, Judge, dissenting.
Because the trial court obviously ignored the expert testimony and the report of the court-ordered guardian ad litem, which is the only evidence in this case bearing on the issue of the best interest of the child, I respectfully dissent.
I have no quarrel with the court's approval of D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27 (Ch.Div.), aff'd per curiam, 144 N.J. Super. 352, 365 A.2d 716 (App.Div. 1976), but believe its facts are substantially different than those of the case at bar. In D'Onofrio the court approved *308 the custodial parent's move to another state where the standard of living and physical environment of the children would be considerably improved and the non-custodial parent (the father) assumed only a minimal role with the children. That is hardly the situation here. Insofar as we can determine from this record, the only circumstance justifying the move to Michigan is the mother's "wish." There is no showing of improved economic or environmental circumstances. Unlike D'Onofrio, the father in this case has exhibited a constant caring and loving attitude towards his daughter. His willingness to participate in her upbringing and to discharge his parental duties are clearly demonstrated upon this record. I think it inappropriate to permit the mother to remove the child to a foreign jurisdiction in the absence of any compelling evidence.
Finally, I think we should give some effect to the concept of "shared parental responsibility." That term found its way into Florida law by virtue of chapter 82-96, Laws of Florida (1982), now codified at section 61.13(b)2.a, Florida Statutes (1983), which provides:
"Shared parental responsibility" means that both parents retain full parental rights and responsibilities with respect to their child and requires both parents to confer so that major decisions affecting the welfare of the child will be determined jointly. In ordering shared parental responsibility, the court may consider the expressed desires of the parents and may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those aspects between the parties based on the best interests of the child.
When it appears to the court to be in the best interests of the child, the court may order or the parties may agree how any such responsibility will be divided. Such areas of responsibility may include primary physical residence, education, medical and dental care, and any other responsibilities which the court finds unique to a particular family and/or in the best interests of the child.
It is always difficult, particularly in Florida, to divine exactly what the legislature intends when enacting a new statute.[1] The concept of shared parental responsibility is sufficiently clear so that one can readily determine that the non-custodial parent has a right of access to the child that should not be diminished without justification. As the court stated in Giachetti v. Giachetti, 416 So.2d 27, 29 (Fla. 5th DCA 1982), "Inherent in the visitation privileges granted to a non-custodial spouse by a judgment of dissolution is a command to the custodial spouse that such visitation privileges should not be unreasonably hampered, hindered or destroyed."[2] The shared parental responsibility concept is effectively destroyed where, as here, the primary residential parent can, on no evidence other than a "wish," remove the child to another jurisdiction. The trial court's findings that both of the parties were fit parents require application of the shared parental responsibility concept as mandated by the legislature. Where everything else is equal and the custodial parent has no particular career prospects while the other parent has a bright future and a responsible position, it is an abuse of discretion to permit the custodial parent to remove the child and thereby deny access to the non-custodial parent.
I would reverse that portion of the trial court's order permitting this child to be removed from Florida.
NOTES
[1] See Harriet L. French, Research in Florida Law 6-7 (1965) (absence of committee reports and debates on bills makes House and Senate Journals have limited value in determining legislative intent).
[2] But see Haines, Giachetti, Shared Parental Responsibility and the Constitution, 58 Fla.B.J. 235 (1984) (criticizing shared parental responsibility in light of Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941)).