# IN RE: The marriage of BRUCE A. HUNTER, Former Husband, and NANCY D. (HUNTER) YATES, Former Wife

Case No. 82-1437

Nineteenth Judicial Circuit, Indian River County

December 26, 1985

## APPEARANCES OF COUNSEL

Calvin B. Brown, Collins, Brown, Caldwell and Mann, Chartered, for petitioner Bruce A. Hunter.

Lawrence A. Barkett, Gould, Cooksey, Fennell, Appleby, Barkett and O'Neill, P.A., for respondent Nancy Yates, f/k/a Nancy D. Hunter.

## OPINION OF THE COURT

DANIEL M. KILBRIDE, Acting Circuit Judge.

THIS MATTER came on for hearing upon the petition for Modification filed by the former Husband seeking to modify the Final Judgment entered in this cause by enjoining the former Wife and minor child of the parties from relocating to a place of residence in Florida having a distance no greater than one hundred and fifty (150) miles from the former Husband's place of residence, to wit, Indian River County, Florida, asking for the establishment of a set visitation schedule. After hearing testimony of the parties and other witnesses, hearing argument of counsel and after reviewing each party's memorandum of law, the court makes the following:

## FINDINGS OF FACT AND LAW

1. This Court views this proceeding as a request to enforce the custody and visitation provisions of the Final Judgment, which provided for shared parental responsibility as set forth in Sec. 61.13(2)(b), Florida Statutes (1983). *Johnson v. Johnson*, 455 So.2d 1332, 1334 (Fla. 4th DCA 1984) and *Giachetti v. Giachetti*, 416 So.2d 27 (Fla. 5th DCA 1982).

2. The parties were divorced on January 30, 1983 in Indian River County, Florida. The child, at that point, was one year old. Shared Parental Responsibility was mandated in the settlement agreement and Final Judgment. Neither the agreement nor the Final Judgment contained a requirement that the Wife or child reside in Florida.

3. The mother and child lived in Indian River County from January, 1983, until December, 1983. The child was in his second year of life during this period of time. There was a conflict of testimony concerning visitation during this period. The father testified that he saw the child regularly by picking the child up at the babysitter's in the afternoons, with the mother picking the child up later after her work hours. The mother testified that the father saw the child very little during this period. The father did testify that when he was with the child, he cared for the child's medical needs, changed diapers, and, in general, cared for the child.

4. The former Wife produced testimony that the father was drunk on occasions and sometimes verbally abused her but, for the most part, this was before the marriage break-up. There was no testimony that the father has ever abused the child.

5. In December, 1983, the mother and child moved to Tampa, Florida. The uncontradicted testimony was that from December, 1983

82

through June, 1985, the father regularly exercised visitation with the child, initially with one week per month visitation. The former Wife testified that she felt that it was not good for the child to be away from the father for extended periods of time (3 weeks) and suggested visitation be every other weekend. This routine commenced with the father travelling to Tampa every other Friday to pick up the child, bring him back to Vero Beach, and returning him on Sunday afternoon.

6. While in Tampa, Florida, from December, 1983, to June, 1985, the former Wife obtained an Associate of Science degree in engineering technology, with honors, from Tampa Technical Institute and was certified in computer programming. In September, 1984, she married Mr. Yates who had extensive experience in fabrication and mechanics in the aircraft industry. While in Tampa, he also graduated from Tampa Technical Institute with an Associate of Science degree.

7. In the Spring and Summer of 1985, the former Wife and her new husband commenced to look for jobs in Florida. The former Wife testified that she, as well as the placement office at Tampa Technical Institute, sent out many resumes seeking employment. The former Wife testified that she received no job offers in Florida. The Court finds that the former Wife made a good faith effort to find employment in her electronic's speciality field of computer engineering technology but was unable to do so.

8. Also in the Spring and Summer of 1985, the former Wife's present husband sought employment in Florida. He received job offers from two former employers, Grumman Aircraft in St. Augustine and Piper Aircraft in Vero Beach, Florida. From the testimony, it appeared that both offers were for inadequate compensation, offered little opportunity for advancement and did not offer job security.

9. While on vacation in Colorado in the early summer of 1985, the former Wife and her new husband travelled to California seeking job opportunities. The new husband was offered and he accepted a position at MacDonald/Douglas Aircraft in the Los Angeles metropolitan area at $14.00 per hour. The testimony of the former Wife indicates that this position offers exceptional employee benefits, as well as job security and excellent potential for career advancement for her husband.

10. The father fearing rumors that the mother and child were leaving the jurisdiction of this State, filed the petition which is before this Court. Notwithstanding the fact that this petition was pending, the former Wife, new husband and the child moved to California in July, 1985. However, prior to moving, the mother obtained a legal opinion

83

from her then attorney, Charles A. Sullivan, Sr., stating that it was permissible for the mother and child to move to California without court order.

11. The former Wife testified that since moving to California, she, her husband and the child have developed friends; she has a brother and a sister-in-law living close by; the child is attending a Montessori day school; has a doctor for the child and other medical facilities are near; attends church and Sunday school regularly. In addition, the new family unit is now living in a protected neighborhood in a townhouse apartment and is generally happy and wish to remain living in California.

12. The former Wife has found a job in California in her field at a fair salary in light of her experience which offers her employment stability and potential for career advancement.

13. The former Wife testified she wants the father and son to have a "normal relationship", and that the move to California was not undertaken to defeat or deprive the former husband of his visitation rights.

14. The father testified that he wants his son to grow up being with him the same way he grew up with his father; that the father and child have similar interests such as boating, fishing, hunting and music; that he has a genuine desire to continue to be with the child on a regular basis so that he can be a real father to the child and participate in developing the child into manhood.

15. The Court holds that the controlling case law applicable to this case is to be found in *Simmon v. Simmon*, 435 So.2d 941 (Fla. 4th DCA 1983) and *Matilla v. Matilla*, 474 So.2d 306 (Fla. 3d DCA 1985) and the detailed analysis approved by both courts in the case of *D'Onofrio v. D'Onofrio*, 144 N.J. Super 200, 300 A.2d 27 (Ch. div.) aff'd per curiam, 144 N.J. Super. 352, 365 A 2d 716 (App. Div. 1976).

## CONCLUSIONS

Applying the standards set forth in the above cited cases to the case *sub judice*, the Court finds from the evidence:

A. It is in the best interest of the minor child not to restrict his residence to Florida. The Court finds that the move to California would afford the new family unit an opportunity to significantly improve their standard of living and the physical environment of the child. This opportunity would not be available to the former Wife and child if they remained in Florida due to the generally prevailing lower

84

wage scale and unstable job market in the former Wife's and her husband's job fields.

B. The Court further finds that the motives of the former Wife in seeking the move were inspired primarily for economic reasons and not by the desire to defeat or frustrate visitation by the former husband, and that the former Wife is likely to comply with the visitation orders set forth below.

C. The Court also finds that due to the nature of the relationship between the father and the son the move to California would not destroy the child's love and respect for his father so long as the father is afforded the opportunity of uninterrupted visits of a week or more in duration several times a year and of longer visits during the summer.

D. The Court further finds that the former Wife is able and should contribute to the transportation costs of the child in order to facilitate the former Husband's visitation schedule.

E. There is no basis to transfer the primary residence of the child to the father.

Wherefore, it is

ORDERED AND ADJUDGED as follows:

1. The former Husband's petition for modification is denied, except as follows below.

2. The former Husband's right of access (visitation) with the child of the parties is modified as follows:

    a. One (1) month every summer, expanding to six (6) weeks the summer following the child's attaining the age of six.

    b. One week at Thanksgiving, one week at Christmas, one week at Easter (or during Spring Break, upon the child entering elementary school).

    c. Every Father's Day (at the expense of the father).

    d. Every other child's birthday (at the expense of the father).

    e. Any weekend the father may happen to be in the child's home state and any weekend the child may happen to be in the State where Husband resides while on vacation.

3. The parties shall each pay ½ the cost of travel expenses for the child during these visitation periods. The father shall be responsible for pick up and delivery of the child at the mother's residence. However, the parties shall endeavor to work out convenient times and methods to help the father exercise his visitation rights in the least costly and least troublesome manner.

4. During the time the father has the child in his care, the father shall not take the child to inappropriate locations including places where alcoholic beverages are sold or consumed on the premises.

5. The parties are directed:

a. To confer with respect to all major decisions affecting the welfare of their child so that such decisions shall be determined jointly.

b. Each party shall notify the other promptly of any serious illness or accident befalling the child.

c. Each party shall have access to records and information pertaining to the minor child including, but not limited to, medical, dental and school records.

d. Both parties shall be entitled to authorize emergency medical treatment for the minor child.

6. The father shall have open, reasonable right to telephone the child at all reasonable times whenever the father desires and to write as often as he likes. The child shall be encouraged to telephone or write the father as often as the child desires.

7. Each party shall keep the other party fully advised as to the location of the child at all times.

8. The court reserves jurisdiction of the parties and the child of the parties for the entry of such further orders as this court deems necessary for the implementation of this order.

DONE AND ORDERED in Vero Beach, Indian River County, Florida, this 26th day of December, 1985.