541 So.2d 708 (1989)
Cynthia Louise DeCAMP, F/K/a Cynthia Louise Kern, F/K/a Cynthia Louise Hein, Appellant,
v.
Darwin Uhle HEIN, Appellee.
No. 88-0205.
District Court of Appeal of Florida, Fourth District.
March 29, 1989.
Rehearing Denied May 11, 1989.
Cynthia Louise DeCamp, Linwood, N.J., pro se.
Charles D. Barnard, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING
LETTS, Judge.
We grant the petition for rehearing, filed by the wife pro se, and set aside the per curiam affirmance and its accompanying special concurrence. Instead, we substitute the opinion that follows:
In a dissolution proceeding, the final judgment provided for the shared parental responsibility of two infant females aged one and three. It also set forth that the *709 mother's home would constitute the primary residence for the two infants, but gave temporary custody of the children to the husband until the wife relocated her residence to the "Tri-County area" in Florida. We reverse.
This tumultuous six-year Florida marriage ended in separation when the twenty-eight year old wife[1] returned with the infants to her birthplace in New Jersey[2] where her mother, four sisters, a brother and innumerable aunts, uncles and fifteen cousins all live. Thereafter, the wife filed a petition for dissolution in Florida and the ensuing order for temporary relief provided for the husband to have possession of the children for a thirty-day Florida visit, at the conclusion of which "the husband shall pay for the expenses of returning the children to the wife's current residence which is New Jersey."[3] The wife waived alimony. Over eight months later, when the second amended final judgment was entered, the court, though it found it in the best interests of the children that their primary residence be with the wife, also found that their best interests would be served by requiring the wife to reside in Broward, Dade or Palm Beach County, Florida. To achieve that end, the trial judge granted "temporary custody" of the children to the husband until such time as the wife relocated to one of those three Florida counties. We believe the trier of fact was in error for several reasons, as hereinafter set forth.
First, the facts of the case at bar go beyond the classic dilemma of whether the custodial parent can move out of state. In fact, the wife's movements were drastically restricted within the state. Moreover, the earlier temporary order recognized that she had already moved and no protest or comment was made as to that order. On the contrary, the temporary order provided that the children be returned to New Jersey. Meanwhile, back in her birthplace, a small town in New Jersey, the wife had found an apartment, a job and had renewed old ties among friends and family. Over twelve months after her return to New Jersey and eight months after the temporary hearing, she was commanded by the final judgment to return to one of only three counties in Florida or give up her hard fought battle to be named as the custodial parent. Under the circumstances, this placed an unreasonable burden on her and was, in effect, a punishment. See Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987); and Ginder v. Ginder, 536 So.2d 1155 (Fla. 1st DCA 1988).
Second, the trial judge's conclusion, and his reasons therefor, are inconsistent. He flatly stated that the wife "has got to move to New Jersey. She has no support down here." Yet he also stated that, "the children do not leave the State of Florida... . They are Florida children and they're not going up [to] New Jersey." The recognition that the wife must go to New Jersey, yet the children must stay in Florida, makes his supposed choice of her as the primary custodial parent an illusory one. We conclude under these circumstances that the trial judge's two pronouncements were incompatible.
Third, passing next to the question of whether the husband or the wife should be preferred as the custodial parent of two female children aged one and three, we note the provision in section 61.13(2)(b)(1) that "the father of the child shall be given the same consideration as the mother in determining the primary residence of the child irrespective of the age of the child." (emphasis supplied) This statutory language at first blush appears to abolish the tender years doctrine, as indeed the Fifth District believes it has. See Kerr v. Kerr, 486 So.2d 708 (Fla. 5th DCA 1986). Yet, this very same section also provides that the equal rights provision only applies "after *710 considering all relevant facts." (emphasis supplied) Relevant facts should obviously include, at least in part, some consideration of the tender years doctrine. It is true that the doctrine can no longer be dispositive because the 1983 amendment to the statute added the "irrespective of age" language; however, we do not believe the doctrine has been totally abolished. For example, a six-month-old baby being nursed by her mother should obviously be in her mother's custody, unless the judge found her unfit. In the case at bar, there is no mention of whether the one-year-old was being nursed by the mother. Nonetheless, our version of common sense suggests that, under the facts of this particular case, the one-year-old female infant and her three-year-old sister preferably should reside with the mother. In Brown v. Brown, 409 So.2d 1133 (Fla. 4th DCA 1982), Judge Hurley quoted with approval the testimony of a psychiatrist who opined: "From zero until four and a half ... the essential person in that child's life is the mother... . I maintain it's extremely important for [a] three year old little girl to be with her mother." True, that case was decided before the 1983 amendment to the statute, as was the seminal case of Dinkle v. Dinkle, 322 So.2d 22 (Fla. 1975), yet the psychiatrist's pronouncement in Brown would still, in our opinion, prove to be a relevant factor in deciding the primary residence of these two baby girls. The reader may well study the preceding deathless prose and remark of its author: "What is he talking about? The trial court did make the wife the primary custodial parent." However, as we have already noted, that was largely an illusory award. The trial court, having agreed that the wife had to permanently return to New Jersey, yet having given "custody" to the husband until she relocated back to Florida, for all practical purposes made the husband the custodial parent. In fact, the record reflects that the husband has had both children living with him ever since the final hearing.
Fourth, and perhaps most importantly, we address the vexing problem of moving out of state and what havoc that wreaks on the visitation rights of the noncustodial parent. Prior to the adoption of the 1971 Dissolution of Marriage Statute, there was little question that the custodial parent could move away from the jurisdiction of the court which granted the dissolution. Even after the enactment of Chapter 61, things continued on, more or less as they had before, until the bombshell of Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982). Much has been written in criticism of Giachetti,[4] and while its actual language has been somewhat distorted, it is widely quoted as authority for the proposition that the custodial parent cannot move out of state, because to do so "effectively terminate[s] the natural father's visitation." However, the Giachetti court opined that such a move would be permitted if it could be shown to be in the best interests of the children. The problem with that deceptively simple predicate, which we have emphasized, was poignantly expressed by Judge Anstead when he wrote: "Who among us has the wisdom to know ... what decision will be in the best interests of the children." Barnhill v. Barnhill, 353 So.2d 923, 925 (Fla. 4th DCA 1978).
The husband is of the belief that it will serve the best interests of the children to be with him because he has more money, a bigger house with a pool near a school. However, while the trial judge wrote and spoke generally about the best interests of the children, it is clear that his decision to prohibit relocation was almost exclusively limited to the cost of air fares and the possibility that the wife, once in New Jersey, would thumb her nose at the Florida court and seek relief in her newfound jurisdiction.
Searching around for something to guide us in resolving the dilemma of to-move-or-not-to-move,[5] *711 we read with much approval Judge Schwartz' decision in Matilla v. Matilla, 474 So.2d 306 (Fla. 3d DCA 1985) wherein, and ironically enough, the Third District adopted the rationale of none other than a court in New Jersey to whence the wife sub judice has now returned.
The New Jersey relocation test, which we here adopt, is found in D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27, aff'd, 144 N.J.Super 352, 365 A.2d 716 (1976):[6]
1. The likelihood of the move improving the general quality of life for both the primary residential spouse and the children.
2. The integrity of the motives for seeking the move to insure it is not done for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. That the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
To this list we, contemporaneously, add two more requirements in accord with Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983):
5. That the cost of transportation is financially affordable by one or both of the parents.
6. That the move is in the best interests of the children. (This sixth requirement we believe to be a generalized sum-up of the previous five.)
Applying these six criteria to the facts of the case at hand may prove somewhat repetitive, yet we would be remiss if we failed to reiterate them.

GENERAL QUALITY OF LIFE
There can be no question but that the move will improve the general quality of life for the wife. She has returned to her birthplace with family and friends, as she testified was her wish, and escaped from frequent confrontations. The opportunity for arguments and violence, (there had been applications for restraining orders) is obviously reduced by a thousand-mile hiatus. We also believe that under the facts of this case the quality of life for the two baby girls will be enhanced if they live with their mother, as we will discuss more fully hereafter.

MOTIVE FOR THE MOVE
Not even the husband claims that the move was made to defeat his visitation rights. The wife testified without equivocation that she moved to escape the violence and turmoil of her broken marriage, her husband's unfaithfulness and to seek security, love and friendship from family and friends. The record makes it abundantly clear that the wife approves of her husband's right of access to the children and contemplates lengthy visitation in the summer. On the other hand, both parents have been less than cooperative with reference to visitation during the pendancy of this dissolution. This recalcitrance must cease forthwith. Generous visitation is a precious right unless one parent or the other has been found unfit.

FLAUNTING OF THE FLORIDA COURT
As noted in the preceding paragraph, the wife testified that she will welcome child visitation for the husband. There is absolutely no indication that she will flaunt the Florida court once she gets the children back to New Jersey. In fact, after moving to New Jersey, she filed the petition for dissolution in Florida and waived alimony.

SUBSTITUTE VISITATION
Money is limited, as we will discuss in the next paragraph hereafter, and the children cannot be flown back and forth twice a month. However, if, in substitute, the father gets visitation for the entire summer and on alternate Christmas and birthdays,

*712 the court should not insist that the advantages of the move be sacrificed solely to maintain weekly visitation by the father... . It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year ... may well serve the paternal relationship better than the typical weekly visit.
D'Onofrio, 365 A.2d at 30.

FINANCIAL FEASIBILITY
The cost of transportation is not unattainable in this case. There is testimony in the record confirming the availability of inexpensive air fares between South Florida airports and Newark. The wife has waived alimony, there was no marital distribution and the judge found that the parties have a combined "available" income of over $31,000. Moreover, the wife is not to receive child support while the husband has custody. There should be money available for several flights a year. The record reveals that their incomes have been sufficient to support their admitted occasional cocaine use. By all means let them save money for air fares by ceasing and desisting from that expensive, criminal habit! Telephone calls can be utilized to further promote the continuation of a meaningful relationship. As soon as the girls can read and write, letters can also be exchanged.

BEST INTERESTS OF THE CHILDREN
The best interests of the children are obviously inextricably interwoven with all that we have set forth above and we again quote approvingly from D'Onofrio: "What is advantageous to the [new family] unit as a whole, to each of its members individually, and to the way they relate to each other and function together is obviously in the best interests of the children." D'Onofrio, 365 A.2d at 29-30.
In the case at bar, to force the wife to return to Florida after a year's absence is certainly most unattractive to her and not in her best interests. She was permitted by the temporary order to keep the children in New Jersey, and to reverse that ruling now without a change in circumstance and tear her away from her new life, family and friends can only result in lasting bitterness. It will also require her to return to the scene of violence and arguments, all of which, if repeated, will adversely affect her relationship with the children and ultimately their best interests especially if they are to witness same. Changing the custody of a child is not a device to be used to obtain compliance with other court orders. See Crippen. Also see Ginder.

CONCLUSION
In conclusion, we must stress that each case in this most sensitive and difficult area  the best interests of children  must be decided after examination of all of its particular facts and circumstances. There can be no bright-line test. With that admonition in mind, we reverse the trial court and remand for the entry of a final judgment granting primary residence of the children to the mother in New Jersey. We affirm the award of shared parental responsibility. A hearing will have to be held to determine the father's visitation rights in accordance herewith, at which time the length of visits, the cost thereof, the respective financial picture of the parties, and any other intervening factors, may be considered. Needless to add, the final judgment's provision that child support not commence until the wife returns to Florida is also prospectively reversed.
If any early agreement can be reached with a maximum of parental goodwill and a minimum of legal intervention, the savings in attorney's fees and costs will undoubtedly pay for many air fares.
In all other respects, the second amended final judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART.
HERSEY, C.J., concurs.
ANSTEAD, J., dissents without opinion.
NOTES
[1] The husband was twenty-nine years old at the time of the separation.
[2] The wife left for New Jersey without notice to the husband.
[3] The wife in her petition claimed she was a Florida resident at the time she filed for dissolution even though she had already departed for New Jersey. However, jurisdiction is not questioned on appeal.
[4] Dellapa, To leave or not leave (the jurisdiction) this is the question, 60 Fla.B.J. 35, 39 (November 1986); Haines, Giachetti: Shared parental responsibility and the constitution, 58 Fla.B.J. 235 (April 1984); Gersten, Parental access and residence restrictions: Giachetti v. Giachetti, 56 Fla. B.J. 869 (December 1982).
[5] See footnote 4.
[6] Since writing this opinion, and just before its issuance, another panel of this court issued Bachman v. Bachman, 539 So.2d 1182 (Fla. 4th DCA 1989), which appears to support what we do here.