545 So.2d 311 (1989)
Francisco Ulises PINTADO, Appellant,
v.
Katharine LEGGETT F/K/a Katharine Pintado, Appellee.
No. 88-1442.
District Court of Appeal of Florida, Third District.
April 25, 1989.
Rehearing Denied July 14, 1989.
*312 William D. Matthewman, Coral Gables, for appellant.
Brian R. Hersh, Miami, and Sheryl L. Lowenthal, Coral Gables, for appellee.
Before SCHWARTZ, C.J., BARKDULL, J., and JOHN W. DELL, Associate Judge.
BARKDULL, Judge.
By this appeal the former husband questions a final judgment of dissolution as it relates to the support provision for his minor children, the award of rehabilitative alimony, the requirement that he pay the fee of a court appointed expert, and a finding of no special equity in the marital home.
The parties were awarded shared parental responsibility. The former wife, who was designated custodial parent of the two minor children, cross-appeals and urges error in the trial court denying her the right to relocate with the minor children (a boy six years of age and a girl three years of age) in the State of Virginia, in the amount of the rehabilitative alimony award, and in ordering her to pay one-half of her attorney's fees.
We find no error as urged by the husband on the main appeal, Canakaris v. Canakaris, 382 So.2d 1197, (Fla. 1980),[1] or on the cross-appeal as to the amount of the award of lump sum rehabilitative alimony, and the attorney fee award. Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985); Protomaster v. Protomaster, 506 So.2d 96 (Fla. 2d DCA 1987); Wellman v. Wellman, 504 So.2d 531 (Fla. 3d DCA 1987); Travieso v. Travieso, 447 So.2d 940 (Fla. 3d DCA 1984). However, we reverse the denial of the right of the custodial parent to relocate in Virginia. The record in this cause reveals that the wife was raised in Virginia, and went to school there. She has a network of friends and family in Virginia, including her parents and a brother. Upon her return to Virginia her parents have agreed to permit her to reside in the sizeable family home until she can get reestablished. She has a position waiting for her with Warner Theater in Virginia with excellant potential to lead into theater management. Because of the bitterness and turmoil occasioned by this dissolution action, which is of a continuing nature, the move would benefit the children by removing them from this atmosphere. On the other hand, the wife has no relatives in Dade County, and apparently little job opportunities. She has clearly demonstrated that the move is not an attempt to frustrate or deny visitation to the husband, and has shown she will adhere to any substitute visitation schedule set by the court if she is allowed to move to Virginia. In fact, the wife had moved to Virginia with the children and had returned to Florida before instituting the instant action. She has fully complied with the order appealed, notwithstanding a showing that she and the childrens' quality of life would improve upon a return to Virginia. Therefore, we find that the trial court's order denying the wife the right to return to Virginia, and in requiring her to reside in a single county within the State of Florida was error. See DeCamp v. Hein, 541 So.2d 708 (Fla. 4th DCA 1989);[2]Bachman v. Bachman, 539 So.2d 1182 (Fla. 4th DCA *313 1989); Matilla v. Matilla, 474 So.2d 306 (Fla. 3d DCA 1985).
Wherefore we find no error in the matters under review save and except the trial court's denial of the appellee's right to relocate in the State of Virginia, and upon remand direct the trial judge to change the custodial provisions of his order to permit the appellee to relocate in the State of Virginia with the minor children, with liberal visitation to the appellant.
Affirmed in part, reversed in part with directions.
NOTES
[1] Any error in entering the judgment against the husband as to expert's fee, was induced by the husband.
[2] Wherein Judge Letts, writing for the court announced six criteria to be applied to a factual situation such as that involved in the instant case as follows:

"GENERAL QUALITY OF LIFE
There can be no question but that the move will improve the general quality of life for the wife. She has returned to her birthplace with family and friends, as she testified was her wish, and escaped from frequent confrontations. The opportunity for arguments and violence, (there had been applications for restraining orders) is obviously reduced by a thousand-mile hiatus. We also believe that under the facts of this case the quality of life for the two girls will be enhanced if they live with their mother, as we will discuss more fully hereafter.
MOTIVE FOR THE MOVE
Not even the husband claims that the move was made to defeat his visitation rights. The wife testified without equivocation that she moved to escape the violence and turmoil of her broken marriage, her husband's unfaithfulness and to seek security, love and friendship from family and friends. The record makes it abundantly clear that the wife approves of her husband's right of access to the children and contemplates lengthy visitation in the summer. On the other hand, both parents have been less than cooperative with reference to visitation during the pendency of this dissolution. This recalcitrance must cease forthwith. Generous visitation is a precious right unless one parent or the other has been found unfit.
FLAUNTING OF THE FLORIDA COURT
As noted in the preceding paragraph, the wife testified that she will welcome child visitation for the husband. There is absolutely no indication that she will flaunt the Florida court once she gets the children back to New Jersey. In fact, after moving to New Jersey, she filed the petition for dissolution in Florida and waived alimony.
SUBSTITUTE VISITATION
Money is limited, as we will discuss in the next paragraph hereafter, and the children cannot be flown back and forth twice a month. However, if, in substitute, the father gets visitation for the entire summer and on alternate Christmas and birthdays, the court should not insist that the advantages of the move be sacrificed solely to maintain weekly visitation by the father... . It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year ... may well serve the paternal relationship better than the typical weekly visit.
FINANCIAL FEASIBILITY
The cost of transportation is not unattainable in this case. There is testimony in the record confirming the availability of inexpensive air fares between South Florida airports and Newark. The wife has waived alimony, there was no marital distribution and the judge found that the parties have a combined "available" income of over $31,000. Moreover, the wife is not to receive child support while the husband has custody. There should be money available for several flights a year. The record reveals that their incomes have been sufficient to support their admitted occasional cocaine use. By all means let them save money for air fares by ceasing and desisting from that expensive, criminal habit! Telephone calls can be utilized to further promote the continuation of a meaningful relationship. As soon as the girls can read and write, letters can also be exchanged.
BEST INTERESTS OF THE CHILDREN
The best interests of the children are obviously inextricably interwoven with all that we have set forth above and we again quote approvingly from D'Onofrio [v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27 (1976)]: "What is advantageous to the [new family] unit as a whole, to each of its members individually, and to the way they relate to each other and function together is obviously in the best interests of the children." D'Onofrio, 365 A.2d at 29-30.
In the case at bar, to force the wife to return to Florida after a year's absence is certainly most unattractive to her and not in her best interests. She was permitted by the temporary order to keep the children in New Jersey, and to reverse that ruling now without a change in circumstance and tear her away from her new life, family and friends can only result in lasting bitterness. It will also require her to return to the scene of violence and arguments, all of which, if repeated, will adversely affect her relationship with the children and ultimately their best interests especially if they are to witness same. Changing the custody of a child is not a device to be used to obtain compliance with other court orders.
CONCLUSION
In conclusion, we must stress that each case in this most sensitive and difficult area  the best interests of children  must be decided after examination of all of its particular facts and circumstances." ...