## IN RE: THE MARRIAGE OF FREELAND
### Case No. 86-2071
Second Judicial Circuit, Leon County
January 16, 1991

## OPINION OF THE COURT

N. SANDERS SAULS, Circuit Judge.

### *ORDER*

THIS CAUSE came on for hearing upon the Supplemental Petition for Modification filed by the Petitioner/Former Wife and the Answer and Counter-Petition for Modification or Injunction filed by the Former Husband and the Court having heard and considered the testimony and evidence presented, the argument of counsel, and having further considered the Objection to Entry of Order and Motion for Rehearing filed by the Former Husband, it is

FOUND, ORDERED AND ADJUDGED as follows:

1. A Final Judgment of Dissolution of Marriage was entered on January 31, 1989 incorporating a Marital Settlement Agreement which provided that the parties would have shared parental responsibility with the mother having primary residential responsibility and providing for secondary parental responsibility and time for the father on alternate weekends, holidays and one evening each week.

2. At the time the Petition for Dissolution was filed herein in June of 1986 the children were eight and five years old, respectively. Up until that time the mother might be said to have been the more superior influence in the lives of the children, i.e., she exercised the more established pattern of responsibility for day-to-day activities, daily schedules and general care and supervision as the father's employment resulted in him being away from home a significant percentage of the time and at home either on weekends or three or four days during a week. There is no indication in the record that the children's father is not also fully capable of assuming and performing these responsibilities but it clearly appears that this has been the allocation of responsibility and the pattern for such that was established during the marriage and the formative stages of the children's lives. During the period of the pendency of the dissolution action the mother continued to exercise this primary pattern of responsibility and until the entry of the judgment of dissolution the father's relationship with the children was admittedly somewhat strained. However, since the entry of the final judgment in January of 1989 the father and children's relationship has been close and he has been a devoted and attentive parent to the children. The parties' daughter will be 14 on her next birthday and will begin high school in the next school year. Their son will be 10 on his next birthday.

3. Subsequent to the dissolution of the marriage, both of the parents have commendably cooperated without rancor or discord in fostering and maintaining their respective parental relationships with their children. They have admirably provided for the emotional and material needs of their children. The parties' recollections differ somewhat with respect to the parental time exercised by the father over the last few years. It does appear, however, that beginning in early 1988 the father began exercising a fairly regular schedule of alternate weekend visitation; that this progressed to a regular weekend schedule sometime during 1989; and, in 1990, the parties have cooperated with the father's exercise of parental time on more than just alternate weekends. In short, both have done an excellent post dissolution job of providing for and maintaining parental relationships with their children.

204

■■■■■■■

4. The mother teaches school with a gross annual income of $21,000 a year. The father is a company supervisor with a gross yearly income of $56,400. Neither of the parents have remarried. Now, the mother wishes to move with the children to Villa Grove, Illinois. The father does not wish that the children move with the consequent disruption of the frequent parental time that he has established with the children over the past few years, especially, during the last past year. There is no genuinely fair resolution to this dilemma.

5. According to the mother, Villa Grove is a town of about 2,500 in population some 150 miles south of Chicago, Illinois. Her parents, aged 80 and 73, respectively, have a 600-acre grain farm there. She has a brother, aunts and uncles and other relatives that live in that area and the children have paternal relatives there as well. The children have spent substantial time during every summer visiting their grandparents on the farm and are familiar with the area.

6. With prudent awareness of the responsibilities each parent shares under shared responsibility parenting with regard to the mutual rights of each parent and a child or children to maintain and foster their familial relationship, the mother requests that the visitation schedule incorporated in the final judgment be modified so that she and the children may move to Villa Grove with compensating parental time for the children and their father being provided during the summers, school vacations and holidays.

7. The mother's reason for the contemplated move is to assume the responsibility and care which is required for her aging parents which she feels obligated to do. She states that the same standard of living that she and the children currently have will be maintained, if not improved; that she believes that the children's school environment and system there will be better; that she and the children will have an opportunity to purchase a home rather than reside in an apartment as they now do; and, that the presence of their extended family in the area will be supportive and beneficial to her and the children.

8. The father takes legitimate issue asserting that the contemplated move will be disruptive and destructive of the close relationship maintained weekly and, by telephone, sometimes daily between the father and the children; that the mother's reason for the move is not compelling; and that the children's best welfare will not be served by a move from familiar surroundings, their friends, schools and extra curricular activities in which they have excelled, a larger community where more cultural activities and opportunities are available and their father's frequent and close contact and association. He requests that

**205**

either primary residential responsibility be changed to him or that an injunction be entered restraining the contemplated relocation to Illinois.

9. As aptly pointed out by the special concurrence in *Kantor v Kantor,* 545 So.2d 1378, 1383 (Fla. App. 4 Dist. 1989), decision making in cases involving family relocations is unusually difficult and distressful. Because they are fact-sensitive, no two cases are the same. It does appear that the best available method of analysis in these kinds of cases is that referred to in *Kantor,* relied upon in *DeCamp v Hein,* 541 So.2d 708 (Fla. App. 4 Dist. 1989) and *Matilla v Matilla,* 474 So.2d 306 (Fla. App. 3 Dist. 1985) and derived from *D'Onofrio v D'Onofrio,* 144 N.J. Super 200, 365 A.2d 27 (1976) and *Cooper v Cooper,* 99 N.J. 42, 491 A.2d 606 (1984).

10. Under Florida's shared responsibility provisions the mutual rights of children and each of their parents to develop and maintain their familial relationships are to be encouraged and protected to the greatest extent as may be reasonable and feasible. Because of the serious effect that a relocation may have upon the rights of children and a parent who is not the primary residential parent, sufficient cause for any relocation must be shown. Initially it must be established, (1) that the relocation will be a real advantage to the parent seeking to relocate, and, (2) that the move will not be harmful to the best interests of the children.

The advantage of the move to the relocating parent that must be shown does not have to be substantial, but must be one based on a sincere and genuine desire and sensible good faith reason. In other words, the motive for the relocation must be genuine and sincere, i.e., not with an ulterior purpose, and the reason must be sensible, i.e., not one that is frivolous.

To establish that the move will not be harmful to the best interests of a child or children, it must be shown that no manifest detriment to them (apart from any consideration of visitation rights) will result from the move, e.g., there are no circumstances such as the unavailability of required special education or medical care or the aggravation of a medical condition.

If a parent seeking to relocate makes a preliminary showing of the above threshold requirements, a court must then consider and balance the evidence of the parties with respect to the following criteria:

(1) The prospective advantages or disadvantages of the move with respect to its likelihood of maintaining or improving the general quality of life of both the custodial parent and the children.

206

(2) The integrity of the motives of both parents. That is, with respect to the parent seeking to relocate, whether the relocation is being sought mainly to defeat or frustrate the parental time of the other parent or to evade or avoid future visitation orders; and, with respect to the parent in opposition to the move, whether the move is opposed mainly to defeat or frustrate the other parent's plans or to obtain some advantage such as a reduction of future financial assistance.

(3) Whether a realistic, reasonable and financially feasible visitation schedule can be fashioned as a substitute that will provide an adequate basis for preserving and fostering a meaningful continuing parental relationship between the child or children and the non-relocating parent, should the relocation occur.

(4) Whether, in light of the above considerations, the contemplated relocation is in the best interest of the child or children.

Several additional general considerations referred to in the *Kantor* and *Matilla* cases, derived from the *D'Onofrio* and *Cooper* cases, must also be kept in mind in applying the above standards. First, a realistic, reasonable and financially feasible parental schedule for a non-relocating parent must be one that will provide an adequate basis for preserving and fostering a child's relationship with that parent. When there has been a pattern of week-end visitation, "a court should be loath to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons." Such a pattern establishes that parent's interest in maintaining a good relationship with the child. Nevertheless, a court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable lifestyle for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial. It is the burden of the non-relocating parent to demonstrate that an alternative visitation schedule is not feasible because of distance, time or financial restraints or that a proposed alternative visitation schedule would be impossible or so burdensome as to affect unreasonably and adversely such parent's right to preserve a relationship with the children. It must be emphasized, however, that more than a showing of inconvenience is required to overcome a threshold showing that the move would be a real advantage to parent and that it would not be harmful to the best interests of the children. If, however, the opposing parent does present evidence that the parent's relationship and visitation with the children would be adversely affected by the move, then the court must balance the compet-

ing interests of the parties. The more evidence there is that the opposing parent's visitation with the children will be adversely affected, the more of a showing of compelling reasons to move must be made by the parent seeking to relocate. If it is shown that the opposing parent's visitation would be adversely changed or curtailed by the move, the court should require a very substantial or compelling showing of advantage by the parent seeking to relocate.

The difference in a child's relationship with the residential or the nonresidential parent must also be kept in mind. Even under the best of circumstances and where the residential parent is supporting of a continuing relationship between the child and the nonresidential parent, the nature of a parental relationship sustainable by way of visitation is necessarily and inevitably of different character than that which is possible where the parents and children reside together as a single-family unit. The fact remains that ordinarily the day-to-day routine of the children, especially younger ones, and the quality of their environment and their general style of life are that which are provided by the residential parent and which are, indeed, the residential parent's obligation to provide. The new family unit consists of the children and the residential parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the nonresidential parent must be considered.

11. In this case, the mother met the threshold burden of showing a good faith sensible reason with a genuine sincere motive and that a relocation will be an advantage to her and not result in any manifest detriment to the children [apart from any consideration of their visitation rights with their father]. It cannot be said that relocation to permit for the caring of parents who are quite advanced in age is frivolous. Nor can it be said that her motivation is to defeat or frustrate the parental time of the children's father or to avoid future orders of the court as to visitation. It is clear that she approves and has cooperated in the father's substantial access to the children and that she contemplates extended parental time for the children with their father during summers, school vacations and holidays in the event of relocation.

12. The movtives of the father here in opposing the relocation is also genuine and sincere. The father's frequent and close association and attentiveness to the children evinces that his opposition is not for any purpose of seeking advantage or any design to simply frustrate the

208

mother's plan to relocate, but, rather, is based upon a sincere assertion that his parental relationship will be adversely affected by a relocation and that undue disruption of the children's lives will be occasioned thereby.

13. With respect to the prospective advantage or disadvantage of a relocation upon the general quality of life of the mother and children, going from a more urban environment with its many advantages to a more rural environment is certainly a substantial change but it cannot be said that the latter is completely lacking in compensating advantages. The mother, who also is a school teacher, asserts a belief that the children's environment at school and the school system itself will in fact be better. She also points to an opportunity for a material change in housing and to the beneficial effects of the supportive ability of extended family which is not available here. There is advantage and disadvantage. When coupled with some consideration of the more superior influence that the mother has in the past significantly exercised with respect to the lives of the children; the beneficial effects of the relocation upon her well-being, and, in turn, the derived benefits to the children therefrom as a result of the interplay of all of the members and the functioning of their family unit; and, with some recognition that young people are usually resilient and adaptable with respect to change, the Court finds that there is a substantial likelihood of improvement in the general quality of life for both the mother and the children. In the context of the family unit, relocation would not be contrary to and would be in the best interests of the children.

14. On the other hand, in addition to a substantial change in the present relationship between the children and their father, the children would also be leaving their familiar surroundings, friends and a variety of activities in which they have been involved. The close association and contact currently enjoyed by the children and father would be adversely affected by a relocation. Although southern Illinois is not as far away as Alaska or Los Angeles, it is still a substantial distance from Tallahassee, Florida. The father has established a pattern of regular weekend visitation and has established his interest in maintaining a good and meaningful relationship with his children. As a result, a more substantial showing of compelling or substantial reason must be made to justify any relocation adversely affecting this established relationship. In this case, the principle reason giving rise to the contemplated relocation is the asserted obligation and desire of the mother to be able to care for her parents, the children's maternal grandparents. There is no highly compelling matter of financial necessity here which usually generates a relocation reason substantially

involuntary in nature. Nor is this a matter which this Court would consider predominantly voluntary in origin as would be a case arising from the circumstance of a subsequent remarriage with a consequent desire to relocate to be with the new spouse, or a circumstance of preferring to pursue or further some career interest not principally influenced by financial necessity, it is more involuntary in nature and thus more compelling in degree than would be the case and circumstances of remarriage or career pursuit alluded to above.

15. When the reason for a contemplated relocation is not strictly voluntary in origin and nature and there is an established pattern of visitation that will be disrupted, the court must then consider whether a substitute visitation is susceptible of being fashioned that will provide an adequate basis for preserving and fostering the relationship between children and their parent on a modified basis. In this case there has been no showing that an alternative visitation schedule is not feasible because of distance, time or financial restraints or that the proposed alternative visitation would be impossible or so burdensome as to affect unreasonably and adversely the children's relationship with their father. A financially feasible and reasonable modified visitation schedule providing for long periods of uninterrupted time during summers, school vacations and Christmas is attainable in this case to provide an adequate basis for preserving and fostering the children's relationship with their father, with the cost thereof being borne equally by the parties.

16. There being no substantial change in circumstances and showing that it will be in the best interests of the children to change the primary residential parent of the children, the father's Counter-Petition for Modification or Injunction should be denied.

Accordingly, it is

FURTHER ORDERED AND ADJUDGED that:

1. The Supplemental Petition for Modification be, and the same hereby is, granted.

2. The Counter-Petition for Modification or Injunction be, and the same hereby is, denied.

3. The Objection to Entry of Order and Motion for Rehearing be, and the same hereby is, denied.

4. The Final Judgment of Dissolution of Marriage entered on January 31, 1989, adopting the Marital Settlement Agreement dated January 17, 1989, be, and the same hereby is, modified effective upon the mother's relocation to Villa Grove, Illinois, to provide visitation between the father and minor children as follows:

210

(a) Every summer commencing one week after school is let out until two weeks before school begins;

(b) Each spring break/Easter holiday period. (That period of time the children are out of school);

(c) Alternate halves of the children's Christmas vacation. Christmas vacation is defined as the period of time from when the children are out of school through December 26 at Noon (one-half) and December 26 at Noon through New Year's Day (the other half). The father shall have the children during the Christmas holiday season for the first year in the year 1992.

(d) The mother shall remain in Tallahassee and not remove the children from the Leon County School System until the end of the present academic year (June, 1991). Until such time the visitation schedule as provided for in the original Final Judgment of Dissolution of Marriage shall apply.

(3) Upon relocation, each party shall be responsible for 50% of the cost of transportation for the Christmas holiday, summer and spring break visitation periods.

DONE AND ORDERED in Tallahassee, Leon County, Florida, this 16th day of January, 1991.