633 So.2d 1096 (1994)
Heide M. Hess JONES, Appellant,
v.
Curtis Lee JONES, Appellee.
No. 91-2258.
District Court of Appeal of Florida, Fifth District.
February 11, 1994.
*1097 Jeffrey L. Dees, Ormond Beach, for appellant.
Peter Keating, Daytona Beach, for appellee.
PETERSON, Judge.
Our decision in Jones v. Jones, 606 So.2d 748 (Fla. 5th DCA 1992) was quashed by the supreme court in Jones v. Jones, 624 So.2d 263 (Fla. 1993). The case was remanded to us for reconsideration in light of that court's opinion in Mize v. Mize, 621 So.2d 417 (Fla. 1993), remanded, 623 So.2d 636 (Fla. 5th DCA 1993).
The parties met and became engaged to be married in Germany while Curtis was serving in the Army. Heide, a registered nurse, was and is a German national. When Curtis was discharged in 1983, he returned to the United States with Heide and they were married. Curtis then attended college and Heide studied to gain Florida certification as a nurse.
Their only child, Robert, was born in 1985 in the United States and both parents seem to be good and loving parents. The marriage was adversely affected, however, by Heide's unhappiness with living in the United States. The family traveled for a visit to Germany in 1986, but once there, Heide chose to remain with Robert. Curtis returned to the United States, but after a short time, again traveled to Germany to be with his wife and son. They resided in the Nuremburg home of Heide's sister until July, 1987 when Curtis and Robert traveled to the United States for what was planned to be a visit of a few months. After 60 days had passed, Heide traveled to the United States with the fear that Curtis and Robert would not return to Germany. Shortly after her arrival, Curtis initiated dissolution proceedings.
The marriage was dissolved in May, 1990, and Heide was awarded primary residential custody of Robert who by then was five years old. Paragraph 10 of the final judgment prohibited Heide from changing her place of residence beyond the jurisdiction of the court without permission of Curtis or the trial court. Initially, Curtis enjoyed liberal and cooperative visitation, but this deteriorated in time, perhaps largely due to Heide's change of work hours at Halifax Hospital from nights to days. Heide became increasingly unhappy in the United States because of her desire to live in her native land and in close proximity to her relatives. She finally petitioned for modification of the final judgment to allow her to reside in Germany with Robert. Curtis counter-petitioned for an award of primary residential custody.
In a considered four page opinion that reflects the trial court's awareness of the facts and applicable law, Heide was enjoined *1098 from removing Robert from the jurisdiction of the court for anything other than a vacation. If she were to elect to resume residence in Germany, Curtis was to become the residential parent. The trial court relied upon two cases in making the decision, but applied them in the alternative, Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982) and Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla. 1990).
The trial court understood Giachetti to hold that a custodial parent has a special duty to the noncustodial parent not to unreasonably hamper or hinder the noncustodial parent's relationship with a child.[1] Based upon that understanding, the trial court held that Heide's voluntary move would definitely interfere with the relationship between father and son.
The trial court then considered the six factors enumerated by the supreme court in Mize. The trial court's opinion follows:
In trying to answer the ultimate question of what is Robert's best interests in this matter, the Court turns to the six part test set forth in Hill v. Hill, 548 So.2d 705 (3rd DCA, 1989).
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the child(ren):

There is a good chance that the move would improve Heide's quality of life. She is homesick. She misses her homeland and her family. She has a good job with good benefits waiting for her. She would be happier in Germany than in the United States. The Court does not believe the move will benefit Robert. He has lived here in Florida for four of his six years. He is happy here, well adjusted, and doing well in school. He is very close to his paternal grandmother who lives in Volusia County, Florida. Robert also has a very limited command of the German language. The Court feels that a move to Germany at this point would be a major disruption of Robert's life.[2]
2. Whether the motive for seeking the move is for the express purpose of defeating visitation:

The move is not sought expressly to defeat visitation, although it will in effect defeat visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements:

Although there is some question, the Court believes Heide would comply with any substitute visitation.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the non-custodial parent:

The Court does not believe any substitute visitation would adequately maintain the current meaningful relationship between Curtis and Robert.
5. Whether the cost of transportation is financially affordable by one or both of the parents:

At this point Curtis could not afford round trip fare to Germany, although he probably will be able to do so in the future. Heide can afford a portion of the transportation costs.
6. Whether the move is in the best interests of the child.

The contemplated move is not in the best interests of the child.
The court concludes that an intended move does violate the Giachetti duty of the custodial parent. The Court also concludes *1099 that per the Hill test the move is not in the child's best interests. Finally, the intended move violates Paragraph Ten of the Final Judgment.
This court does want to emphasize that it is not without sympathy for Heide. She is a good parent, and the Court understands her homesickness and desire to return to Germany. This international marriage, and subsequent divorce, is immensely complicated by a growing child cherished by both parents. Under the circumstances of this particular case, the Court finds the best interests of the child will be served by not allowing Heide to permanently remove him to Germany. Should Heide elect to stay in Florida she is entitled to continue as the residential parent. If she elects to move to Germany, custody shall revert to Curtis.
Since the trial court applied the correct test, a reasoned analysis of the six factors set forth in Hill, the standard of appellate review applicable to our scrutiny of the trial judge's order is whether the trial court abused its discretion. In re Gregory, 313 So.2d 735 (Fla. 1975); Dinkel v. Dinkel, 322 So.2d 22, 24 (Fla. 1975) ("abuse of discretion ... requires a lack of substantial competent evidence to sustain the findings of the trial judge"). see also Culpepper v. Culpepper, 408 So.2d 782, 784 (Fla. 2d DCA 1982) (a trial court has less discretion in modifying the custody provisions of a final judgment of dissolution than in making the original custody determination); Cf. Buttermore v. Meyer, 559 So.2d 357 (Fla. 1st DCA 1990) (Canakaris standard of review does not apply to orders concerning modification of child custody and visitation  dispositive issue as to such modifications is whether competent substantial evidence is presented proving substantial change of circumstances and that welfare of child will be promoted by a change in custody and visitation).
The supreme court commented on a trial court's discretion and what constitutes an abuse of that discretion in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980):
[W]here the action of the trial judge is within his judicial discretion, as in the ... award of child custody, the manner of review is altogether different.
Judicial discretion is defined as:
The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.
1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed. 1914). Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
Id. at 1202-1203. The trial court anticipated and appropriately applied the requisite Hill test finding the best interests of the child did not lie in his permanent removal to Germany. We see no need to require the trial court to repeat the task. While there may be those who differ with the action ordered by the trial judge, the action appears to us to be both reasonable and supported by competent substantial evidence. Therefore, it cannot be said that the trial court abused its discretion. The portion of the September 16, 1991 order denying modification is affirmed.
We adhere to our original decision on the issue of attorney's fees.
AFFIRMED.
*1100 DIAMANTIS, J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, J., dissenting.
I respectfully dissent. I disagree that the trial court applied the correct test as set forth in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla. 1990), and instead relied on precedent from this court which has now been disapproved. Thus I would remand to the trial court to reconsider Heide's petition for modification of the final judgment of dissolution.
At the time of the hearing (1991), this district had issued several cases which made it very difficult for the custodial parent to move out of the state of Florida without the permission of the noncustodial parent. See, e.g., Giachetti v. Giachetti, 416 So.2d 27, 29 (Fla. 5th DCA 1982) ("Inherent in the visitation privileges granted to a noncustodial spouse by judgment of dissolution is a command to the custodial spouse that such visitation privileges should not be unreasonably hampered, hindered or destroyed.")[1]See also Mize v. Mize, 589 So.2d 959 (Fla. 5th DCA 1991), quashed, 621 So.2d 417 (Fla. 1993); Mast v. Reed, 578 So.2d 304 (Fla. 5th DCA 1991); Cole v. Cole, 530 So.2d 467 (Fla. 5th DCA 1988); Jones v. Vrba, 513 So.2d 1080 (Fla. 5th DCA 1987). These cases conflicted with the "best interests" test of Hill. See Mize, 621 So.2d at 417, 418 n. 1. The conflict was not resolved until 1993 when the Florida Supreme Court issued Mize, in which it adopted the approach articulated in Hill. Mize, 621 So.2d at 419.
The majority opinion concludes that the trial judge relied upon both Giachetti and Hill "but applied them in the alternative..." This the trial judge could not do. Since this court had not receded from Giachetti and its progeny, and the holdings in those cases had not yet been overruled by the supreme court, the trial judge was required to follow that precedent. Pardo v. State, 596 So.2d 665 (Fla. 1992); Bowman v. Corbett, 556 So.2d 477 (Fla. 5th DCA 1990).
Even assuming that the trial court "anticipated" the use of the Hill test, I disagree that the trial court properly applied it. The judge's finding that "no substitute visitation" could be "adequate" was without sufficient basis in the record. Although the alternating weekend visitation pattern of visitation would not be possible if the former wife and child moved to Germany, the former wife offered to pay for and send the minor child of the parties to and from Germany, for extended visits with the husband; 1 1/2 months during the summer and 2 weeks either at Christmas or Easter. In such cases, longer, less frequent visitations are deemed to be an adequate substitute. See Tamari v. Turko-Tamari, 599 So.2d 680 (Fla. 3d DCA 1992).
NOTES
[1] The trial court's understanding of the principle of Giachetti appears to be an expression in different language of the fourth factor to be considered in Hill, to wit: whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children with the noncustodial parent.
[2] In Mize the supreme court seems to have held that the six factors must be weighed in making the ultimate decision when there are circumstances which would justify a departure from the general rule that what is best for the relocating parent is best for the child. It does not seem that a parent's well-being and a child's well-being necessarily go hand in hand, but quoting Judge Schwartz's Hill concurrence, the supreme court seems to have adopted this view. We note that the first paragraph of the trial court's order constitutes a finding that Heide's and Robert's well-being do not go hand in hand.
[1] In its order, the trial judge specifically concluded that the intended move "does violate the Giachetti duty of the custodial parent."