654 So.2d 207 (1995)
Cynthia L. RUSSENBERGER, Appellant,
v.
Ray Dean RUSSENBERGER, Appellee.
No. 94-804.
District Court of Appeal of Florida, First District.
April 21, 1995.
*209 E. Jane Brehany of Myrick, Silber & Davis, P.A., Pensacola, for appellant.
Crystal Collins of Emmanuel, Sheppard & Condon, Pensacola, T. Sol Johnson of Johnson, Green & Locklin, P.A., Milton, for appellee.
VAN NORTWICK, Judge.
Cynthia L. Russenberger, now known as Cynthia L. Steltenkamp, appeals an order granting her former husband's petition to enforce a final judgment of dissolution and prohibiting her removal of the five Russenberger children from Pensacola, Florida, without court approval. Ray Dean Russenberger challenges an order denying his motion for psychological evaluations of the five children. We affirm both orders.

BACKGROUND
The parties to this appeal were married in July 1976, and five children were born to that union. Mr. and Mrs. Russenberger separated in February 1991 and were divorced by a final judgment of dissolution entered in January 1993. This final judgment incorporated a marital settlement agreement between the parties, which provided among other things, that:
It would be in the best interest of the children for the parties to have shared parental responsibility with the Wife designated as residential custodian subject to liberal and reasonable rights of visitation by the Husband to include every other weekend and such other times as the parties can agree.
The settlement agreement defined "shared parental responsibility" to mean:
A court ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each so that major decisions affecting the welfare of the child will be determined jointly.
At the time of dissolution, both parties resided in the Pensacola area. Neither the settlement agreement nor the final judgment of dissolution required either party to remain in Pensacola or specifically prohibited relocation.
Almost immediately following the entry of the final judgment of dissolution, the parties began experiencing difficulties relating to visitation. On February 4, 1993, Mr. Russenberger filed a motion to enforce the final judgment, outlining problems he was experiencing with visitation, and asked the court to impose specific visitation. Then, on February 5, 1993, Mr. Russenberger was, for the first time, advised through counsel that his former wife intended to relocate to Suffern, New York, with the five Russenberger children. On February 22, 1993, Mrs. Steltenkamp, through counsel, further advised Mr. Russenberger that she "would like to work out a liberal and reasonable visitation schedule with [him] so there will be no problems after the household is established in Suffern, New York." On February 25, 1993, Mr. Russenberger filed a petition to enforce the final judgment and a motion for temporary injunction seeking to enjoin his former wife from relocating the children to Suffern, New York. On April 5, 1993, the trial court temporarily enjoined Mrs. Steltenkamp from removing the children from Pensacola "to allow the children an opportunity to complete the school year and also allow the former husband *210 an opportunity to explore and investigate the intended move...."
Cynthia Russenberger married Mike Steltenkamp in May 1993. In September 1992, Mr. Steltenkamp, who had resided in Pensacola for several years and who has a Ph.D. in chemistry, had accepted a new position with his employer which required him to relocate to New York in January 1993. Prior to their marriage, Mrs. Steltenkamp and her new husband purchased a home in Suffern, New York with the apparent intent of relocating there with the five children.
During the relocation litigation, the parties continued to have difficulties concerning Mr. Russenberger's "liberal and reasonable" visitation with his children. In May 1993, Mr. Russenberger filed a motion for contempt, in which he again requested the court to establish specific visitation. In addition, the parties began negotiating visitation during the children's summer vacation, but were unable to reach an agreement. Specifically, the parties could not agree on the children traveling to Suffern, New York during the summer months. As a result, in May 1993, Mr. Russenberger also filed a motion seeking the court to determine visitation privileges during the summer vacation period. Mr. Russenberger contended that any travel by the children to New York would violate the temporary injunction that prohibited the removal of the children from the Pensacola, Florida area.
A hearing to determine whether Mrs. Steltenkamp could take the children to New York for summer vacation was set for June 9, 1993. From Friday, June 4, 1993, through Sunday, June 6, 1993, Mr. Russenberger exercised his normal weekend visitation with the children. During that visitation, the children did not indicate that they might be going to New York, and Mrs. Steltenkamp did not inform him of any plan to take the children to New York. However on Monday, June 7, 1993, Mr. Russenberger received a telephone call from Mrs. Steltenkamp indicating that she was in New York with the children and that he would not be able to exercise his week day visitation for the next couple of weeks. Mr. Russenberger immediately filed an emergency motion for contempt, alleging that his former wife had violated the temporary injunction. The motion was heard on June 9, 1993. Although the trial court declined to find Mrs. Steltenkamp in contempt, it ordered her to "return the children of the parties to Pensacola, Florida, within twenty-four (24) hours" and if she "failes (sic) to return the children then the former husband ... is hereby permitted to go to the State of New York and assume temporary custody of the children for the purpose of returning them to Pensacola... ."
The parties' inability to work together to discuss and resolve custody, visitation and parenting issues is readily apparent from the record. Between the date of the entry of the final judgment of dissolution in January 1993 and the final hearing on the relocation issues in December 1993, eleven hearings and two status conferences were held in this case, and thirty-three pleadings, excluding appellate pleadings, were filed.
During the course of the proceedings below, Mr. Russenberger also requested that the lower court enter an order compelling psychological evaluations of the children. The lower court initially determined that it would be in the best interests of the children to designate Mr. Russenberger as the parent "responsible for the psychological care and concern of the minor children... ." This responsibility included the right to determine whether psychological examinations were warranted. By way of a writ of certiorari, occasioned by Mrs. Steltenkamp's petition, this court reversed the trial court's order, finding that it did not conform to the essential requirements of law and could have caused material injury. Russenberger v. Russenberger, 623 So.2d 1244 (Fla. 1st DCA 1993).
Ray Russenberger appealed to the Supreme Court of Florida, citing conflict with Gordon v. Smith, 615 So.2d 843 (Fla. 4th DCA 1993), and Pariser v. Pariser, 601 So.2d 291 (Fla. 4th DCA 1992). Although the supreme court eventually found that no conflict was present, it did accept jurisdiction and approved this court's decision. Russenberger v. Russenberger, 639 So.2d 963 (Fla. 1994).
*211 While his appeal was pending before the supreme court, Mr. Russenberger renewed his motion for psychological evaluations. Thereafter, the lower court issued an order finding the mental condition of the children not to be a matter in issue and, therefore, the request for evaluations was denied. It is this order that Mr. Russenberger now challenges.
The trial court held a three-day evidentiary hearing in December 1993 on the issues relating to the relocation of the children to Suffern. Extensive evidence was offered by both sides concerning the proposed relocation, including the testimony of psychologists concerning the impact on the children of the proposed relocation and evidence demonstrating the relative merits of Suffern, New York and Pensacola, Florida as places of residence for the children. Also at issue was the closely-related question of which parent would enjoy residential custody and what visitation privileges would be exercised by the non-custodial parent.[1]
In a 13 page order, the lower court expressly considered the supreme court's decision in Mize v. Mize, 621 So.2d 417 (Fla. 1993), and, after discussing in detail the application to the facts of this case of each of the factors set forth in Mize, the lower court prohibited relocation. The lower court further ordered that the court's standard visitation schedule would be imposed on the parties because of the difficulties experienced regarding visitation. It is this order which Mrs. Steltenkamp now challenges.

THE DENIAL OF PSYCHOLOGICAL EVALUATION
As indicated above, the lower court considered the renewed motion for psychological evaluations after the entry of this court's opinion reversing the previous trial court order but before the entry of the supreme court's decision affirming our disposition. In other words, the lower court did not have the benefit of the supreme court's opinion on this matter. Russenberger, 639 So.2d 963. Mr. Russenberger now suggests that the instant order fails to conform with the dictates of the supreme court's decision. We disagree.
Although there is no specific authority for the motion cited, Mr. Russenberger stated in his renewed motion for psychological evaluations that the psychological impact on the children of a move to Suffern was a matter directly in controversy. Such an assertion suggests that the former husband was seeking psychological evaluations on authority of Rule 1.360, Florida Rules of Civil Procedure.
The lower court determined, as a matter of fact, that the psychological impact of the proposed move was not a matter in issue, and we find no basis in the record to disturb this finding. As for the argument that the lower court erred by holding a hearing on the renewed motion, we find it to be without merit. While it is true that the supreme court determined that a hearing on a request under Rule 1.360 was not required, Russenberger, 639 So.2d at 965, it certainly was not reversible error for the lower court in this case to inquire beyond its minimum threshold of authority.

RELOCATION OF THE MINOR CHILDREN
Since King Solomon was called upon to render the first reported child custody decision,[2] courts have struggled with the conflicting interests and emotions involved in custody disputes. In today's mobile society, *212 courts are frequently faced with a circumstance in which the custodial parent, usually the mother, desires to relocate with the children to pursue an educational or career opportunity or to move with a new spouse. In these cases, the court not only must weigh the interests of the children, the primary interest to be considered, Mize, 621 So.2d at 420, but also the interests of the custodial parent, who many times see a substantial advantage in relocation, Hill v. Hill, 548 So.2d 705, 707 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla. 1990), and the interests of the noncustodial parent, who, as a result of a relocation, may effectively lose visitation rights and certainly may have greatly reduced contact with the children, Mize, 621 So.2d at 425 (Shaw, J., concurring in result only). As our supreme court has noted, these conflicting interests give rise to issues that present "an impossible problem for the children, the parties, and the courts." Mize, 621 So.2d at 420.

The Mize Decision

Our principal focus in reviewing the trial court's denial of the wife's request to relocate is the supreme court's decision in Mize v. Mize, supra. In Mize, the supreme court was called upon to review an order allowing a custodial parent and a seven year old child to move from Florida to California over the objection of the other parent, the natural father. The supreme court began its analysis by noting that Florida law presumes that both parents will participate in child-rearing after divorce. § 61.13(2)(b), Fla. Stat. The court acknowledged that courts both within and without Florida have grappled with the difficulty posed when the custodial parent seeks to remove a child from the area of the former marital home recognizing that "[t]here are an infinite number of situations that must be evaluated in light of the best interests of the families involved." 621 So.2d at 419. While a bright line rule was found to be impractical, the supreme court nevertheless recognized the lack of consistency in decisions of the lower courts and a lack of guidance available to the lower courts and therefore adopted the approach established by the Third District Court of Appeal in Hill v. Hill, supra.
In Hill, the district court reversed an order denying a custodial parent's petition to relocate out-of-state.[3] Noting that a test of sorts had evolved from case law,[4] the court found that a petition for relocation should be considered using the following criteria:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the custodial parent.

*213 5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interests of the child.[5]
548 So.2d at 706. Interestingly, the Hill court, in finding that the trial court erred, did not remand for consideration of the six factors but instead weighed these factors itself and found that relocation was erroneously denied.
Concurring in result, Judge Schwartz wrote separately in Hill to articulate his "own understanding of the underlying rule of law applicable to the present issue... ." Id. at 707. He concluded that:
As I see it, it is simply that so long as the parent who has been granted the primary custody of the child desires to move for a well-intentioned reason and founded belief that the relocation is best for that parent's  and, it follows, the child's  well-being, rather than from a vindictive desire to interfere with the visitation rights of the other parent, the change in residence should ordinarily be approved.
Id. at 707-708 (footnotes omitted).
Judge Schwartz reasoned that this rule of law arises from the premise that since the best interests of the child "have already resulted in an award of custody to a particular parent ..., it follows that the child should live wherever that residence may be rather than in what is by definition the less important location of the other parent." Id. at 708. In other words, "... the child should be placed with that parent whose custody has been deemed to forward his best interests even if that location does not happen to be Florida." Id. at n. 4.[6]
In Mize, the supreme court adopted the six factor analysis set forth in the Hill majority opinion. Mize began its discussion of Hill, however, by quoting the following passage from Judge Schwartz's Hill concurrence:
[S]o long as the parent who has been granted the primary custody of the child desires to move for a well-intentioned reason and founded belief that the relocation is best for that parent's  and it follows, the child's  well-being, rather than from a vindictive desire to interfere with the visitation rights of the other parent, the change in residence should ordinarily be approved.
Mize, 621 So.2d at 419, quoting Hill, 548 So.2d at 707-08. By quoting this passage from the concurring opinion, Mize appears to be endorsing the view that a request to leave the jurisdiction should presumptively be approved. In fact, in his concurring opinion in Mize, Justice Shaw viewed the majority opinion as creating a "virtual per se rule favoring removal." 621 So.2d at 422 (Shaw, J., concurring in result).
Yet, the Mize court does not expressly adopt a per se rule. Rather, the opinion expressly requires the courts of this state, when considering requests to relocate, to apply the Hill six-factor analysis to the facts of the case. When viewed as a whole, however, the combination of the six-factor test and the language from the Hill concurring opinion seems internally contradictory.[7] In addition, *214 since satisfaction of all six criteria seems difficult to achieve, how are the designated factors to be weighed? For example, if any factor is found wanting, does that mean that relocation must be denied?
Other courts have discussed this seeming internal conflict within Mize. In Jones v. Jones, 633 So.2d 1096, 1098 n. 2 (Fla. 5th DCA), rev. denied, 639 So.2d 978 (Fla. 1994), the Fifth District, while reviewing an order prohibiting relocation, observed:
In Mize the supreme court seems to have held that the six factors must be weighed in making the ultimate decision when there are circumstances which would justify a departure from the general rule that what is best for the relocating parent is best for the child. It does not seem that a parent's well-being and a child's well-being necessarily go hand in hand, but quoting Judge Schwartz's Hill concurrence, the supreme court seems to have adopted this view. We note that the first paragraph of the trial court's order constitutes a finding that [the interest's of the parent who seeks to relocate] and [the child's] well-being do not go hand in hand.
(Emphasis added).
Similarly, the court in Tremblay v. Tremblay, 638 So.2d 1057 (Fla. 4th DCA 1994), suggested that the Mize court's adoption of the Hill factors and the quotation from Judge Schwartz's concurrence seemed to be a pairing of contrasting viewpoints; to wit:
The adoption in Mize of the six factors to be considered in these cases did not significantly change the law in this district, since this court had previously utilized them. The adoption in Mize of what Judge Schwartz stated in his concurring opinion in Hill, however, does represent a significant change. It means that where the relocating parent is acting in good faith, permission to relocate should generally be granted; i.e., granting relocation becomes the proverbial rule, rather than the exception.
638 So.2d at 1059 (citations omitted).
Despite the apparently conflicting references both to the Hill majority opinion and to Judge Schwartz's Hill concurrence, Mize does not strike us as creating a per se rule favoring relocation.[8] Reading Mize in its entirety to give meaning to the Mize court's adoption of both the Hill majority and concurring opinions, we believe Mize requires that, where a relocating parent is acting in good faith, a trial court must permit relocation if the best interests of the children, as determined based upon an analysis of the applicable facts using the Hill factors, will be served at least as well in the proposed location as in the present location. Further, we believe that the presumption in favor of relocation expressed in Mize places a burden of proof on the parent opposing relocation. Accordingly, in relocation cases involving joint custody in which the marital settlement agreement and final judgment do not restrict relocation, we conclude that Mize requires the relocating parent first to establish that the relocation is not for a vindictive or improper motive and that the new location would offer a quality of life for the child at least equal to the child's quality of life in the present location. If such a showing is made by the relocating parent, the burden is then shifted to the non-custodial parent to establish by a preponderance of the evidence that the proposed relocation of a child is not in the child's best interests under the Hill factors. If the non-custodial parent cannot meet this burden, the relocating custodial parent should be permitted to move with the child.[9]
*215 In addition, in considering the six Hill factors, the weighing of the factors should be undertaken by the trial court on a case-by-case basis, based on the particular facts of each case, with the primary concern being the best interests of the child or children. Mize, 621 So.2d at 420. Circumstances such as the relationship between the parties and between each party and the children, the financial resources of the parties, the age of the children, the ability and willingness of the parties to assure adequate substitute visitation, and the family and community support systems and resources available to the children in each location will vary greatly from case to case. In addition, a factor that has a minor impact in one case may be the dominant factor in another. In our view, it is for the trier of fact to weigh and consider the facts of each case in the context of the six Hill factors.

The Trial Court's Mize Analysis.

In its order, the trial court below first correctly concluded:
The Mize v. Mize decision is controlling in this matter and this Court must, in making the ultimate decision about relocation, consider and weigh the six factors set forth in Hill v. Hill, as adopted by the Mize decision. This Court's interpretation of the Mize decision is that the majority Hill decision was the ruling. This Court interprets Mize as meaning in weighing and balancing the criteria, if it is a close call, then the call must go in favor of relocation.
(Citations omitted).
The trial court then considered each Hill factor in detail.
General Quality of Life for Both Primary Residential Parent and Children. The trial court found that:
[T]here is no question that the move would improve the general quality of life for Mrs. Steltenkamp . .. She would be reunited with her husband. She would be where she wants to be and she would be able to achieve what it is she wanted to achieve through the dissolution, and that is happiness, which is such an elusive and nonquantifiable quality but it is there.
Although the trial court concluded that the relocation would be "certainly a value to the blended family," the court expressly found that the quality of life of the children would not likely be improved by the relocation.
The second aspect of this criteria though is whether it is likely to improve the general quality of life for the children. There are many advantages to Suffern, New York. The schools are good schools, there are many activities available, including the recreational aspects, track programs, the theater and the neighborhood. It is a good place ... The issue is whether the move will improve the general quality of life for the children. The children are in a good situation right now. They are in good schools. They have been in a good neighborhood. They are doing well. They are involved in many activities and have a good support group here. They are well-adjusted and they are happy now. The evidence does not support that the quality of life for the children will be improved ... The court finds that this is not a factor that supports relocation for the children. It does for Mrs. Steltenkamp.
Motive for the Move. The trial court found that "[t]here has been no evidence here that [relocation] is for that express purpose [of defeating visitation]." The court expressed substantial concern, however, about Mrs. Steltenkamp's failure to inform Mr. Russenberger during the negotiation of the Marital Settlement Agreement that she could be moving, at a time she knew a move to New York was possible. The court concluded that Mrs. Steltenkamp kept the information from Mr. Russenberger to avoid the difficulty of having to litigate the relocation issue at the time the court was considering the dissolution and initial custody and visitation arrangements. *216 As a result, the court concluded with respect to the second factor that "this Court does not find that the move was for the express purpose of defeating visitation, but the implication is that the impact would be that it would. Thus, I find this criterion somewhat neutral."
Compliance of Moving Parent with Substitute Visitation Arrangements. Based on the trial court's experience with and knowledge of the parties gained during the divorce, custody and relocation litigation, the court concluded that this factor weighed against allowing relocation. The court discussed in detail what it described as:
[A] long-standing history of the inability of the parties to have a good relationship regarding the children and ... a long-standing history of Mrs. Steltenkamp not encouraging the visitation, following very much a precise schedule of visitation, but not allowing the small bits of flexibility that need to be there.
The court recited several examples of Mrs. Steltenkamp's failure to communicate with Mr. Russenberger concerning the children after the date of the dissolution and her lack of encouragement of contact between the children and Mr. Russenberger. As a result, the court concluded:
This court finds on the whole that it is highly questionable whether Mrs. Steltenkamp would be likely to comply with substitute visitation arrangements. It is not happening here in Pensacola. With Mr. Russenberger being out of town and not residing where Mrs. Steltenkamp resides, history dictates in this case that visitation would peter out.
Adequacy of Substitute Visitation. The trial court concluded that this factor also weighed heavily against allowing relocation, finding:
[T]hat there is no adequate substitute visitation schedule which would promote a continuing meaningful relationship between the non-custodial parent, Mr. Russenberger, and the five minor children.
This conclusion was reached by the trial court after an analysis of various circumstances, including the relationship between Mr. Russenberger and the five children and his involvement in their activities in Pensacola; the difficulty of the travel between Suffern and Pensacola on the weekends the children visited in Pensacola; the limited length of time Mr. Russenberger would have with each child under the proposed substitute visitation, given that all five children would be visiting Pensacola at the same time period; the lack of a framework or home for visitation that would be conducive to effective visitation by Mr. Russenberger in New York; the fact that the financial and other burden of the proposed substitute visitation is "place[d] on Mr. Russenberger's shoulders when it is [Mrs. Steltenkamp's] decision to move", and the fact that Mr. Russenberger would have a very limited opportunity to play a role in the children's activities in New York.
Financial Affordability of Transportation. The trial court described the cost of transportation as an "easy" factor since "[t]he parties have stipulated that they can both afford it." As a result, the trial court concluded that "this factor favors relocation."
Best Interests of Children. The trial court recognized that "as the Hill majority opinion states, this is a generalized summary of the above five factors." Based on its analysis and balancing of the first five Hill factors, the trial court concluded that the move would not be in the best interests of the children. In reaching this conclusion, the trial court stated:
This Court finds that it would not be in the children's best interest to allow the relocation. The evidence does not support relocation. The court finds that Mr. Russenberger has been active in the lives of all five children, at least since the parties' separation; he has consistently exercised alternate weekend visitation with all five children, plus one day each week with at least the younger children; he has participated in their extracurricular activities in a consistent fashion; the children's extracurricular activities have become a part of the children's weekend visitation schedule so that the children's separate lives are not disrupted by the visitation schedule; the visitation which now occurs between Mr. Russenberger and the children is beneficial. *217 The visitation would not continue should the children move from the Pensacola area. It is in the best interest of all five children that Mr. Russenberger continue to play an active weekly role in their lives.

The Standard of Review.
The Mize court did not articulate the standard of review to use in cases such as the one before us. We are of the view that our role is to determine whether the lower court applied the correct law under Mize and whether the lower court abused its discretion, that is, whether there is a logical and reasonable resolution of the Hill factors, supported by competent and substantial evidence. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975) (in a child custody proceeding, the lower court's decision will be affirmed if the court's findings are supported by competent, substantial evidence; a custody decision made upon findings which are not supported by competent and substantial evidence constitutes an abuse of discretion); see also, Jones v. Jones, 633 So.2d 1096 (Fla. 5th DCA 1994) (since trial court correctly applied the Hill test, the standard of appellate review is whether the trial court abused its discretion).
The trial court below expressly examined each of the Hill factors, and thereafter, concluded that moving the Russenberger children to New York would not be in the children's best interest. Although there was conflicting evidence with respect to virtually all of the issues before the trial court, and we may have reached a different result had we served as trier of fact, our review of the record establishes clearly that there is competent and substantial evidence to support the findings of the trial court and that the trial court correctly interpreted and reasonably applied the law. As a result, we find no basis to disturb the trial court's order. In affirming, we are particularly influenced by the fact that the trial judge has been involved with these parties and the children for some time, has presided over several evidentiary hearings in this case, and thus, is quite familiar with the competing facts and claims. Further, the lower court's order indicates the careful consideration given to the complex and difficult issues presented in this case.
[W]ho but the wisest among us, except in the clearest of cases, could divine what may be in the best interests of the children? The master and trial judge have done the best they could and I do not believe we should interfere. In doing so we are simply substituting our opinion on an issue which the triers of fact, by reason of their first hand contact with the situation, are uniquely suited to resolve.
Costa v. Costa, 429 So.2d 1249, 1255 (Fla. 4th DCA 1983) (Anstead, J. dissenting) (citation omitted).

IMPOSITION OF A STANDARD VISITATION SCHEDULE
As noted above, Mrs. Steltenkamp also challenges the lower court's decision to impose on the parties a standard visitation schedule. According to Mrs. Steltenkamp, the imposition of this standard visitation schedule was erroneous because it amounts to a modification of the final judgment of dissolution when there has not been a substantial change of circumstances shown to justify modification.
Principal among the cases cited by Mrs. Steltenkamp in support of this argument is Buttermore v. Meyer, 559 So.2d 357 (Fla. 1st DCA 1990). In Buttermore, a former husband sought modification of a final judgment which granted residential custody of the minor children to the former wife subject to "reasonable visitation" to be exercised by the former husband. Modification was sought apparently because the parties had differing views as to what constituted reasonable visitation. Noting that the order on appeal was an order granting a motion for modification, this court referred to the well-established rule that modification may be granted only upon a showing that a substantial and material change in circumstances has occurred. See, for example, Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984).
The record in the instant case reflects that a motion for modification had been filed, but apparently, the lower court was not ruling upon this motion specifically when the standard visitation schedule was implemented. *218 We are not inclined to reverse on this point however. We must concede that by imposing the standard visitation schedule, the lower court imposed specific burdens that were not previously present. Nevertheless, in view of the fact that both parties were seeking residential custody of the children, we find that the issue of visitation was, by consent of the parties, an issue before the court.
For the reasons expressed above, the order denying the request for psychological evaluations and the order prohibiting relocation and imposing a standard visitation schedule are AFFIRMED.
KAHN and MICKLE, JJ., concur.
NOTES
[1] Under the marital separation agreement, Mr. Russenberger was entitled to visitation "every other weekend and such other times as the parties can agree." During the relocation litigation, Mr. Russenberger requested an extended period of summer visitation and Mrs. Steltenkamp proposed a substitute visitation schedule that would govern visitation in the event the relocation was approved by the trial court. In the proposed schedule, Mr. Russenberger generally would have been entitled to visitation (i) every other weekend, with alternating visitation weekends being exercisable in Pensacola and within the state of New York; (ii) alternating Easter, Christmas, and Thanksgiving holidays; (iii) Father's Day weekend; (iv) every spring school break; and (v) five continuous weeks during the summer vacation period.
[2] "And the King said, `Divide the living child in two, and give half to one, and half to the other' ... And all Israel heard of the judgment which the King had judged; and ... they saw that the wisdom of God was in him, to administer justice." 1 Kings 3:25, 28 (King James).
[3] In Hill, a mother who was given primary residential custody of a then six year old boy sought to leave Miami with the child and relocate to Alabama. It is significant that in Hill, neither parent was originally from Florida, and the family had only moved to this state in 1984, when the husband obtained a job in Miami and therefore moved the family from Alabama to South Florida. The child was born in Alabama, and all relatives  with the exception of the father who continued to work in Miami  lived either in Alabama, Georgia or Tennessee. 548 So.2d at 706.
[4] The Hill court specifically cited the Florida cases of Matilla v. Matilla, 474 So.2d 306 (Fla. 3d DCA 1985), Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983), and DeCamp v. Hein, 541 So.2d 708 (Fla. 4th DCA 1989), rev. denied, Hein v. DeCamp, 551 So.2d 461 (Fla. 1989); and the landmark New Jersey case of D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27 (Ct. Ch. 1976), aff'd, 144 N.J. Super. 352, 365 A.2d 716 (1976). 548 So.2d at 706. Although Hill and Mize derived their six factor test from the four factor test in D'Onofrio, and D'Onofrio continues to be followed by other jurisdictions in relocation cases, see Staab v. Hurst, 44 Ark. App. 128, 868 S.W.2d 517 (1994), the D'Onofrio holding has been substantially modified by the New Jersey Supreme Court. Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988); see D. Manz and J. Bennett, Jr., Mize: Florida's Disenchanted Response to the Relocation Dilemma, 68 Fla.B.J. 53, 55-57 (Dec. 1994).
[5] Both the Hill court and the Mize court viewed the sixth factor as a "generalized summary of the previous five." Hill, 548 So.2d at 706; Mize, 621 So.2d at 420.
[6] Notwithstanding this recognition of the premise that the interests of the relocating parent and child are uniform, commentators remain in substantial disagreement as to whether a child's best interests are necessarily satisfied when the best interests of the custodial parent are served. For example, compare, J. Horne, The Brady Bunch and other Fictions: How Courts Decide Child Custody Disputes Involving Remarried Parents, 45 Stan.L.Rev. 2073, 2110 (1993) ("Regardless of what a judge may think of a parent's reasons for moving, if the move improves the parent's situation  including his emotional situation  it may ultimately be in the child's `best interests' regardless of the parent's motives.") with P. Raines, Joint Custody and the Right to Travel: Legal and Psychological Implications, 24 J.Fam.L. 625, 656 (1985-6) ("It is rarely in the child's best interest to change geographical locations subsequent to a divorce, regardless of the fact that the parent with whom the child is primarily residing may feel more self-satisfied after the move.")
[7] For example, a multiple-factor test, strikingly similar to the Hill factors, adopted by the Illinois Supreme Court in In re Marriage of Eckers, 119 Ill.2d 316, 116 Ill.Dec. 220, 224-225, 518 N.E.2d 1041, 1045-1046 (1988), has been described as subscribing to a "presumption against the right to remove a minor child... ." Linngren, The Feuding Fortins: South Dakota Adopts A Presumption in Favor of the Custodial Parent's Right to Remove a Minor Child from the Jurisdiction in Fortin v. Fortin, 39 S.D.L.Rev. 661, 674 (1994). Given the Mize court's adoption of the language from Judge Schwartz's Hill concurrence in conjunction with the six-factor test, obviously Mize cannot be said to give rise to a presumption against relocation.
[8] We recognize that our reading of Mize may conflict with the reading given Mize by our colleagues of the Fourth District. See, Tremblay v. Tremblay, supra.
[9] In this ruling, we are guided by the approach taken by courts in other jurisdictions which, like Mize, have adopted a presumption in favor of the right to relocate. In those jurisdictions, if the relocating parent shows that the proposed move is not for an improper purpose, this presumption is deemed to impose a burden of proof on the non-relocating parent to establish that the move is inconsistent with the child's best interests. See, e.g., Auge v. Auge, 334 N.W.2d 393, 398-399 (Minn. 1983) (motion to permit relocation shall be granted, unless the party opposing the move establishes by a preponderance of evidence that the move is not in the best interests of child); In re Marriage of Lower, 269 N.W.2d 822 (Iowa 1978) (burden of proof should be on party opposing relocation to show that the move is not in the best interests of the child).