HARRIS, J.,
concurring specially:
I write to express more clearly what I believe to be our role in relocation cases. We, the courts, lack the authority, statutory or otherwise, to order the mother to remain in Florida in order to accommodate the father’s weekend visitation. The most that we can do is to either approve or disapprove her request to take,the children previously placed in her custody along with her to Colorado. In making this decision, the trial court and this court are to be guided by section 61.13(2)(d), Fla. Stat. It seems axiomatic, however, that if the court denies the mother’s request to relocate, it must do so based on a finding that it is in the best interests of the children to remain in Florida. If that is the case, and if the mother persists in her decision to move, then the court, because of her relocation (substantial change in circumstance) and in consideration of the best interests of the children, must be willing to change the residential custody to the father or to some other suitable person. This record fails to identify any “other” suitable person who could receive custody.
Because the trial court approved the mother’s relocation with the children based on the factors set out in section 61.13(2)(d), we must decide whether the court abused its discretion in doing so. Further, even though I do not suggest that the mother will leave Florida without her children, because she has the right to do so, we should analyze this appeal as though the mother will complete her move in either event.
Since there is no real issue relative to factors 2 through and including 5[1], I will *253 concentrate on factors 1 (enhancement of general quality of life) and 6 (best interests of the children).
What does the statute contemplate by enhancement of the “general quality of life?” Although I have found many cases that discuss the term, none have defined it. Perhaps that is because the term must necessarily be defined on a most subjective basis. What does the individual at issue consider important in his or her life? Some might find that the excitement of Bourbon Street in New Orleans enhances their existence, others might prefer the fun they find at the Grand Ole Opry in Nashville, and still others may determine that regular attendance at the Metropolitan Opera in New York City is essential to their happiness. The mother in this case wishes to exchange walks on the beach for hikes through the mountains and water skiing for snow skiing. Instead of raising the children in a golf/retirement community in Florida, she would prefer to raise her children in a small town in Colorado. Unquestionably, this would make the mother happier and more content. Is this not a part of the general quality of life? The court in Russenberger v. Russenberger, 654 So.2d 207, 215 (Fla. 1st DCA 1995), observed: “She would be where she wants to be and she would be able to achieve what it is she wanted through the dissolution, and that is happiness, which is such an elusive and non-quantifiable quality but it is there.”
Happiness was also recognized as a part of the general quality of life in our case of Jones v. Jones, 633 So.2d 1096, 1098 (Fla. 5th DCA 1994), in which we said: “There is a good chance that the move would improve Heide’s quality of life. She is homesick. She misses her homeland and her family. She has a good job with good benefits waiting for her. She would be happier in Germany than in the United States.”
Even if we assume that the mother’s increased happiness and contentment will qualify as improving her general quality of life, and I do, does it necessarily follow that the children’s quality of life will also be enhanced? Jones says the mother’s quality of life is distinct from that of the children. So also did the court in Russenberger. But the court in DeCamp v. Hein, 541 So.2d 708 (Fla. 4th DCA 1989), receded from on other grounds by Kuutti v. Kuutti, 645 So.2d 80 (Fla. 4th DCA 1994), held that where the move would enhance the quality of life of the mother then, at least under the facts of that case, the quality of life of the children would also be enhanced by living with the mother[2]. It appears that although the quality of life of the mother and the quality of life of the children may, depending on the facts of the case, not be the same, if it is shown that the mother’s quality of life will be enhanced by the move, then it should be assumed, unless there is evidence to the contrary, that the children’s quality of life will also be enhanced by living with a happier and more contented “residential custodian.” There was no evidence in this case that the children’s quality of'life would be adversely affected by the move.
Still, because this element is so nebulous in the case at bar, the enhanced quality of life of the mother and children, assuming it was shown, is of minor consideration. Far more important is the best interests of the *254 children under the facts of this case. The father complains that the trial judge dwelt too much on his broken promise, to the mother made prior to their dissolution. When the mother pushed for him to change his job so that he could spend more time with the family, he agreed that once he had accumulated $4,000,000 in investment grade securities he would change positions so that he would not constantly be traveling and could therefore better participate as a father and a husband. He breached this agreement and ultimately the dissolution occurred. The father claims that such matter is irrelevant to the current issue of whether the mother should be permitted to relocate with the children. I find continuing relevancy only when we consider the appropriateness of alternative placement under the best interests of the children standard.
The only option to not approving the mother’s request to move with the children (since she cannot be ordered to stay in Florida) is to transfer residential custody to the father. .This is not a viable option. If the father had been a hands-on parent even after the dissolution, “being there” to help in the day-to-day upbringing of the children, perhaps a transfer of custody would be appropriate. But this father, instead of choosing to be near the children on a day-to-day basis where he could help them with their homework, attend their school functions, console them when they were sad, encourage them when they needed encouragement, and cheer their successes, chose to continue his quest for greater wealth and, for that reason, lived in Brazil over 70% of the time. Granting custody to the father would be assigning the children’s care to his very new wife and to such professional caregivers as he might employ. The children’s contact with their father, even if he obtained custody, would be limited to sharing him with his new wife when he came home on weekends. Even worse, assuming the mother did move without the children, she would still be entitled to reasonable visitation. The father’s reasonable visitation would appear to also be reasonable for her. Thus, she should get five weeks in the summer and every weekend, two with the children visiting her in Colorado and two with her visiting the children in Florida. Since the father returns from Brazil only on weekends, this would mean that even as the residential custodian he would never see the children. Unless, of course, we require the mother to accommodate the father’s voluntary choice to live in Brazil.
We can huff and we can puff. We can tell the mother that if she moves to Colorado she risks losing custody of her children. We can hope that such threat will be sufficient to keep her in Florida. But intimidation is not contemplated by the law nor is it the role for this court. Because I believe it to be in the children’s best interest that they remain with their mother whether she resides in Colorado or Florida, I find that the trial judge did not abuse his discretion in approving the relocation.

. (2) The father unquestionably exercised his weekend visitation on a regular basis. (3) There is no indication in the record that the mother will not comply with substitute visitation requirements if she is permitted to relocate. (4) Although the substitute visitation will not be as satisfactory as is currently exercised, it is adequate to foster a continuing meaningful relationship between the children *253 and their father. (5) Finally, the cost of transportation is the least of the parties' worries.

. DeCamp quoted with approval the following statement: "What is advantageous to the [new family] unit as a whole, to each of its members individually, and to the way they relate to each other and function together is obviously in the best interests of the children.” DeCamp, at 541 So.2d at 712.